UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - DETROIT

In re:                                          Case No. 09-77897-wsd

MEYERS, KATHLEEN R.,                             Chapter 7

       Debtor.                                Hon. Walter Shapero

_____/

### OPINION ON MOTION TO DISMISS

This matter came before the Court upon the United States Trustee's Motion to Dismiss pursuant to 11 U.S.C. § 707(b)(2) and (b)(3). (Docket No. 15). Debtor filed her Response to the Motion and an evidentiary hearing was held.

### I.

Debtor is 56 years old and employed as a school teacher. She lives with, and financially supports, her brother and sister, who are ages 47 and 58, respectively. Neither of these siblings is currently employed. Her brother was receiving $719 in monthly unemployment benefits at the time of her bankruptcy filing, benefits which may have since either ceased or been extended. Debtor is presently the primary source of support for both siblings, except to the extent that her brother may be receiving extended unemployment benefits.

Debtor testified that she supports her brother not only because he has a severe alcohol abuse problem, but also because he is unable to financially support himself. She testified that her sister last worked two years ago as a nuclear medicine technologist, but due to a loss of nearly all her teeth, her sister would require dental surgery before she could become reemployed.

In addition to providing food and housing, Debtor pays, for herself and her siblings, (1) vehicle related expenses, including insurance, fuel, maintenance, etc., and (b) various other expenses of her siblings, including $117 per month for her sister's storage unit, $3,800 total for her sister's dental surgery, and $120 per month to repay her brother's debt to a friend.

1

Debtor filed her chapter 7 petition and schedules on December 11, 2009, listing unsecured debts of $34,466, comprised primarily of credit card debt.

## **II.**

Section 707(b)(1) provides, in pertinent part:

> After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, trustee (or bankruptcy administrator, if any), or any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter.

11 U.S.C. § 707(b)(1). Subsection (b)(2) goes on to provide a mechanical formula to determine if a presumption of abuse exists, and subsection (b)(3) instructs courts to consider whether the case was filed in bad faith or whether the totality of the circumstances of a debtor's financial situation demonstrates abuse. Both subsections are examined in turn.

**a. 11 U.S.C. § 707(b)(2)**

Under § 707(b)(2) abuse is presumed if, after taking certain deductions from debtor's current monthly income, the amount remaining, multiplied by 60, exceeds "(I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $ 7,025, whichever is greater, or (II) $10,950." 11 U.S.C. § 707(b)(2). If a presumption of abuse arises, the debtor is given an opportunity to rebut the presumption by showing special circumstances, such as a serious medical condition or call to active duty in the armed forces.

Here, the UST argues that Debtor's Form B22A was incorrectly completed and a presumption of abuse exists because (1) Debtor's household size is listed as three, and it should be one; (2) Debtor failed to include the $715 her brother received in unemployment benefits; and (3) ownership expenses are deducted for a second car on Line 24 despite the fact that Debtor herself owns only 1 car. If any of these items were changed the way the UST proposes, a presumption of abuse would arise.

2

### *i. Appropriate household size for purposes of Form B22A*

The Bankruptcy Code does not define the term "household" for use in the chapter 7 means test. Some courts, examining the issue, have found the U.S. Census Bureau's definition of "household" as "all of the people, related and unrelated, who occupy a housing unit" to be appropriate for means test purposes, *see*, *e.g.*, *In re Ellringer*, 370 B.R. 905, 910 (Bankr. D. Minn. 2007); In re Epperson, 409 B.R. 503, 507 (Bankr. D. Ariz. 2009); while other courts have held that a "household" only includes those members for whom debtor provides support, *see*, *e.g.*, *In re Jewell*, 365 B.R. 796, 801 (Bankr. S.D. Ohio 2007). Under either approach, this Debtor has a household of three as her brother and sister reside in the same housing unit and she provides their support.

### *ii. Appropriateness of including brother's unemployment compensation on Form B22A*

Section 101(10A) defines "current monthly income", in relevant part, as: "the average monthly income from all sources that the debtor receives" and "includes any amount paid by any entity other than the debtor…on a regular basis for the household expenses of the debtor or the debtor's dependents." While Debtor testified that she did not receive any money from her brother's unemployment compensation, it would not be unreasonable from her general testimony regarding the household environment to infer that such funds were used by her brother for items Debtor would otherwise (and now does) pay for, and therefore would constitute household expenses. As such, the unemployment compensation should have been included in the Form B22A.

In her post-trial brief, Debtor argues that since the unemployment benefits may have now ceased, it would be inappropriate to include them in the means test calculation. The Court disagrees. The petition date is the appropriate date from which to draw the figures calculated into the means test. The means test is not a fluid calculation to be continually updated as debtor's circumstances change. *In re Ellringer*, 370 B.R. at 910 ("The means test provides a snapshot of debtors' finances. The means test is not meant to be continually updated as debtors' circumstances change.").

### *iii. Appropriateness of deducting second vehicle ownership expense on Form B22A*

The UST objects to Debtor's taking an ownership expense deduction for a second vehicle on Line 24 of Form B22A because Debtor does not herself own the vehicle for which said deduction is taken (the vehicle being owned by either her brother or sister). Given that Debtor is the sole source of support for both of these individuals, and seeing as how, in the present circumstances, any repairs to the vehicles (and the vehicles' eventual replacement), will likely be paid by the Debtor, the Court concludes that it is appropriate for the Debtor to list a second vehicle ownership expense on Line 24.

### *iv. Presumption of abuse*

The inclusion of Debtor's brother's unemployment compensation into Form B22A results in a presumption of abuse arising. Pursuant to § 707(b)(2)(B),

> (i) In any proceeding brought under this subsection, the presumption of abuse may only be rebutted by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative.
> (ii) In order to establish special circumstances, the debtor shall be required to itemize each additional expense or adjustment of income and to provide--
> (I) documentation for such expense or adjustment to income; and
> (II) a detailed explanation of the special circumstances that make such expenses or adjustment to income necessary and reasonable.
> (iii) The debtor shall attest under oath to the accuracy of any information provided to demonstrate that additional expenses or adjustments to income are required.
> (iv) The presumption of abuse may only be rebutted if the additional expenses or adjustments to income referred to in clause (i) cause the product of the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv) of subparagraph (A) when multiplied by 60 to be less than the lesser of--
> (I) 25 percent of the debtor's nonpriority unsecured claims, or $ 7,025, whichever is greater; or
> (II) $ 11,725.

The presumption of abuse can be rebutted by a reduction in a debtor's income below the current monthly income figure. 6-707 *Collier on Bankruptcy* P 707.05. Debtor filed an

Affidavit of Special Circumstances in which she avers that her brother was receiving unemployment benefits, but did not provide any of those funds for the household expenses. With this income excluded from the § 707(b) calculation, the presumption is successfully rebutted.

**b. 11 U.S.C. § 707(b)(3)**

In determining whether this case constitutes an "abuse" under § 707(b)(3), the Court must examine the totality of the circumstances and determine whether the Debtor is "honest" and "needy". *In re Krohn*, 886 F.2d 123, 126 (6th Cir. 1989); *In re Behlke*, 358 F.3d 429, 434 (6th Cir. 2004). "'[H]onest,' in the sense that [Debtor's] relationship with his [or her] creditors has been marked by essentially honorable and undeceptive dealings, and […] 'needy' in the sense that his [or her] financial predicament warrants the discharge of his [or her] debts in exchange for liquidation of his [or her] assets." *Krohn*, 886 F.2d at 126. The UST bears the burden of establishing by a preponderance of the evidence that the case should be dismissed as an abuse under § 707(b)(3). *In re Beckerman*, 381 B.R. 841, 844 (Bankr. E.D. Mich. 2008).

There is no allegation or indication that Debtor has been anything other than honest in her relationship with her creditors, and therefore the inquiry is limited solely to whether Debtor is "needy" of a chapter 7 discharge. In making determinations as to neediness, courts have looked to the following non-exclusive factors:

> (a) whether the Debtor has the ability to repay his debts out of future earnings; (b) whether the Debtor enjoys a stable source of future income; (c) whether the Debtor is eligible for chapter 13 relief; (d) whether there are state remedies with the potential to ease the Debtor's financial predicament; (e) whether relief may be obtained through private negotiations with creditors; and (f) whether expenses can be reduced significantly without depriving the Debtor of adequate food, clothing, shelter and other necessities.

*In re Beckerman*, 381 B.R. at 845 (citing *In re Krohn*, 886 F. 2d at 126-27).

The factor most applicable to the Court's analysis in this case is (f), whether the Debtor's expenses can be significantly reduced without depriving her of adequate food, clothing, shelter and other necessities. In its Motion to Dismiss, the UST points out that after it inquired as to discrepancies between Debtor's income listed on original Schedule

I and her pay statements, Debtor amended Schedules I and J, adding a 401K contribution of $650 and raising her expenses in excess of $1,200. Some of the Schedule J expenses which have been amended upward include electricity and heating fuel ($336 from $278); telephone ($231 from $160); medical and dental expenses ($450 from $180); transportation ($550 from $250); recreation, etc. ($150 from $100); and auto insurance ($293 from $115). Other expenses were added in the later amendments, including $120 per month for her brother's unsecured debt to a friend; $200 per month for her bankruptcy attorney; $50 per month for her brother's child support payment; and $187 per month for hair care, pet care, and her sister's storage locker. The UST also challenges the Debtor's $200 home maintenance expense as unreasonable.

### *i. 401k contributions*

This Court has previously examined the issue of whether voluntary contributions to a retirement plan are per se unnecessary expenses for purposes of determining disposable income in a hypothetical chapter 13 plan, and found, that such contributions are not per se unreasonable, but must be examined on a case-by-case basis. *In re Beckerman*, 381 B.R. at 848. In determining whether such a contribution is necessary to the maintenance and support of a debtor, the Court looks to factors such as: (1) amount of any existing retirement savings; (2) the debtor's age and time left until retirement; (3) annual income and overall budget; (4) amount of monthly contributions; and (5) needs of any dependents. *Id*.

Debtor's current retirement savings include approximately $6,000 in her 401k account and a separate pension from her employer, Plymouth-Canton Community Schools. Debtor is 56 years old and plans to retire in 5 years. (See Aff., ¶ 3). Debtor testified that as recently as September 2009, she contributed roughly $350 per month to the 401k,[1] but that she increased her monthly contribution to $650 in preparation for retirement. In addition to the monthly 401k contribution, $243 is deducted from Debtor's pay for "Michigan State Pension." There was no testimony as to what benefits will be provided under this pension.

---

[1] No 401k contribution is shown on the original or First Amended Schedule I; neither Debtor nor counsel offered an explanation for this omission.

Under the totality of the circumstances, the Court finds that the 401k contribution in this case is unnecessary and should not be deducted when determining disposable income for the funding of a hypothetical chapter 13 plan. This conclusion is necessitated by (a) the fact that Debtor appears to have increased her contribution on the eve of bankruptcy in an attempt to facilitate an early retirement, and (b) the existence of a separate pension provided by Debtor's employer. Presumably, Debtor will be entitled to a social security benefit of some type at retirement as well. In light of the above, particularly the fact that the contribution was increased to enable retirement at age 61, the Court finds that the $650 should be included in disposable income available to fund a hypothetical plan.

### *ii. Increased expenses*

The Court finds it odd that Debtor should have so many of her monthly expenses increase from the time of the case filing to the time of the filing of her various amendments. To be sure, the amendments show decreases in certain expenses as well,[2] but the net effect is an increase of over $1,200. Such material swings obviously impact the credibility of the figures currently represented.

Of the increased expenses, the Court finds several to be susceptible to reduction. These include the telephone ($231 per month) and recreation, etc. ($150 per month) expenses. The recreation expense is patently unreasonable, and the $231 for telephone service can undoubtedly be reduced. Debtor should require, at most, 2 telephones: a home phone and/or a mobile phone. To the extent that the current expense includes additional phones, e.g., for her brother or sister, it is unreasonable. If Debtor's brother and sister cannot work or otherwise provide for any of their own support, there is not an apparent *need* for them to have mobile phones. An appropriate telephone figure for the purposes of determining disposable income is $100; an appropriate figure for recreation in these circumstances (given that cable and internet are a separate line item at $82 per month), would be $20 per month.

---

[2] The decreased expenses on the Fourth Amended Schedule J include: water and sewer (from $85 to $45); clothing (from $100 to $50); homeowner's insurance (from $70 to $35); and property taxes (from $140 to $123).

As mentioned above, due to material changes from one iteration of the schedules to another without satisfactory explanation, the Court finds the following expenses to be less than completely credible: electricity and heating fuel ($336 from $278); medical and dental expenses ($450 from $180); transportation ($550 from $250); and auto insurance ($293 from $115). The Court would not be at all surprised if Debtor's actual monthly outlays for these expenses are less than the recited figures. Even assuming the figures to be correct, it is questionable whether Debtor should be paying the transportation and auto insurance expenses of her brother and sister. If these individuals are unable to work at present, it would seem unnecessary that they each maintain a vehicle. One vehicle, if a vehicle is needed at all, would seem to be sufficient to take care of any transportation that is required. Presently, both the brother and sister have a vehicle for which Debtor pays all maintenance, operating, and insurance costs. This is unreasonable and unnecessary. For purposes of determining disposable income for calculating a hypothetical chapter 13 plan, the Court will reduce the transportation expense to $300 and the auto insurance expense to $200.

### *iii. Expenses added to amended schedules*

Debtor added several expenses to her amended schedules J that merit attention. The first is a monthly payment of $120 for an unsecured debt of her brother. Debtor testified that she pays this amount each month because the recipient, a friend of her brother, is paraplegic and relies upon the money. While Debtor's intentions are well meaning, her creditors should not be compelled to bear the effect of this repayment. This Court has previously disapproved of a debtor's payment of a third party's unsecured debt at the expense of her own creditors, and will do so again here. *In re Hicks*, Case No. 09-68742 (Bankr. E.D. Mich. July 21, 2010).

Another expense that should not be born by Debtor's creditors is her brother's monthly child support payment of $50. This is a debt where state law remedies may be available. If Debtor's brother is truly in such a condition that he is completely unable to work, then the monthly obligation could presumably be reduced or eliminated upon petitioning of the appropriate court. This expense is of such a nature that it should not be born by Debtor's creditors.

A further expense that the Court finds unnecessary is the $117 expended each month by Debtor for her sister's storage locker. This expense is not reasonably born by Debtor's creditors.

### *iv. Home maintenance*

The UST challenged the $200 per month budgeted by Debtor for home maintenance expense as unreasonable. Debtor's explanation for the necessity of this expense is that it is used for things such as caulking the aluminum siding on her house to save energy. While some home maintenance is of course necessary, the Court is skeptical of the amount purportedly expended in this case. For purposes of determining disposable income for a hypothetical chapter 13 plan, the Court will reduce the home maintenance expense to $100.

### *v. Hypothetical chapter 13 plan*

If Debtor's expenses and retirement contributions are reduced as set forth above, she would have disposable income of roughly $430.75 each month.[3] Debtor's unsecured debt totals $34,466, so over a 60 month plan, a dividend in excess of 70% is possible.

The fact that Debtor could reasonably reduce her expenses and fund a chapter 13 plan that provides a material dividend to her unsecured creditors weighs heavily in favor of finding that she is not sufficiently "needy" of chapter 7 relief. Further bolstering this outcome is the fact that she enjoys stable employment as a school teacher and her present income is expected to continue. Under the totality of the circumstances, the Court must conclude that Debtor is not sufficiently "needy" of chapter 7 relied and the case is therefore an abuse under § 707(b)(3).

---

[3] This figure fails to take into account the increased taxes that will result from discontinuing the 401k contribution. The effect of this will be mitigated however, if not completely offset, by what appears to currently be overwithholding, as evidenced by tax refunds of several thousand dollars which Debtor testified she has received in past years and expects to continue.

9

### **III.**

For the reasons set forth above, the Court will enter an order conditionally granting the UST's Motion to Dismiss pursuant to 11 U.S.C. § 707(b) unless, within 20 days from the entry of said order, Debtor converts to a chapter 13 proceeding. The UST shall present such an appropriate order.

.

**Signed on September 02, 2010**

                                            **\_\_\_\_ \_\_/s/ Walter Shapero\_ \_\_\_**
                                            **Walter Shapero**
                                            **United States Bankruptcy Judge**